IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Robert L. Poole, Jr., *pro se*,　　　　　　　　Case No. 3:06 CR 722
　　　　　　　　　　　　　　　　　　　　　　　(3:09 CV 529)
　　　　　Defendant/Petitioner,
　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　-vs-　　　　　　　　　　　　　　　　AND ORDER

United States of America,　　　　　　　　JUDGE JACK ZOUHARY

　　　　　Plaintiff/Respondent.


Before the Court are a number of pending motions filed by *pro se* Defendant Robert Poole: (1) Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 241); (2) Motion to Amend (Doc. No. 243); and (3) Motion to Recuse (Doc. No. 250). The Government opposes the Motion to Vacate and the Motion to Recuse (Doc. Nos. 248 & 252). Each motion will be addressed below.

### BACKGROUND

In January 2007, Defendant was convicted following a jury trial of conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana (Count 1) and possession of cocaine base with intent to distribute (Count 12). The jury made the following special findings with respect to the drug quantities: (1) 50 grams or more of cocaine base as to Count 1; and (2) 5 grams or more of cocaine base as to Count 12.

At trial, Defendant's participation in the narcotics conspiracy was established through the testimony of witnesses, as well as evidence developed through monitored drug transactions, recorded telephone conversations, and telephone toll records. The evidence showed that Charles Bailey, who

is the son of co-defendant Samuel Thornton, was the leader of the drug conspiracy. Defendant and Thornton were cousins.

Jeff Estelle was a confidential informant (CI) who worked with the Lima Police Department for approximately two years. At trial, Estelle testified that money was his motivation for cooperating with Lima Police. On direct appeal, the Sixth Circuit summarized Estelle's involvement in the case as follows:

> The CI, Estelle, was the primary source of testimony for Poole's involvement in the conspiracy. Estelle testified that, in early November 2003, he traveled with Poole and Thornton from Lima, Ohio, to Fort Wayne, Indiana, where he personally observed Poole and Thornton buy two ounces of crack cocaine. Poole rode in Estelle's car during this trip, and Poole indicated to Estelle that he wanted to "do his own thing" because Thornton was "slowing him down." Estelle understood Poole to be referring to drug trafficking. Bailey's testimony regarding the scope of the conspiracy and Estelle's testimony regarding Poole's participation set forth the basis for the conspiracy count as it pertained to Poole.
>
> On December 15, 2003, investigators arranged for Estelle to conduct a controlled drug buy from Thornton. Estelle had several telephone conversations with Thornton and one with Poole, the clear import of which was that Thornton and Poole were preparing crack cocaine for sale to Estelle. Estelle met Thornton and Poole at a Lima intersection, where he gave Thornton $1,000, which had been provided by investigators, in return for crack cocaine. Estelle was wearing a wire for this transaction. Surveilling officers determined that the car in which Thornton and Poole arrived was registered to Poole. The December 15, 2003, transaction was the basis for Count 12.

*United States v. Poole*, 538 F.3d 644, 646-47 (6th Cir. 2008).

Estelle also participated in taping conversations between he and Defendant. Taped telephone calls were played at trial for the jury at which time Estelle identified the voices heard during the conversations and testified to his understanding of statements made by Defendant and Thornton during the conversations. In one of the conversations, Estelle and Defendant discussed meeting so

that Estelle could purchase drugs. Estelle wore a body wire during the subsequent controlled drug purchase, and that too was played for the jury.

During his trial testimony, Estelle admitted he lied to law enforcement in May 2004 about having taken a second trip to Fort Wayne with Defendant and others to "make a purchase" (Trial Tr., Estelle at pp. 541-42). Estelle testified he fabricated the story about the second trip because he needed the money that he was being paid by police to provide information (*id.* at p. 541). When investigators confronted Estelle in June 2004, he admitted he lied (*id.* at p. 544). At that point, Estelle was terminated as a CI (*id.*).

After the jury's conviction, this Court sentenced Defendant to 151 months imprisonment on Counts 1 and 12, to be served concurrently, followed by five years of supervised release (Doc. No. 190).

Defendant filed a direct appeal to the Sixth Circuit, challenging the sufficiency of the evidence to support his convictions and his sentence. In addition, Defendant argued a retroactive amendment to the Sentencing Guidelines relating to cocaine-base offenses required his case be remanded for resentencing in light of the amendment. The Sixth Circuit upheld Defendant's conviction in August 2008, but remanded the case to this Court to consider whether Defendant was entitled to a sentence reduction pursuant to the revised Guidelines related to cocaine-base offenses. *Poole*, 538 F.3d at 647.

Defendant filed a *pro se* motion to reconsider with the Sixth Circuit on September 9, 2008, which was denied by the court on February 6, 2009. Defendant's subsequent application for a rehearing en banc was returned unfiled by the Sixth Circuit on February 24, 2009 because "Neither the Federal Rules of Appellate Procedures nor the Rules of the Sixth Circuit make any provision for

3

filing successive petitions for rehearing." The mandate for the case was issued by the Sixth Circuit on March 9, 2009.

Meanwhile, pursuant to the remand, in October 2008, this Court resentenced Defendant to 131 months imprisonment (a twenty month reduction), after consideration of the amended Guidelines (Doc. No. 237). Defendant did not directly appeal the resentencing.

On March 9, 2009, Defendant filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, raising four grounds for relief: (1) ineffective assistance of trial counsel; (2) conviction obtained by prosecutorial misconduct; (3) ineffective assistance of appellate counsel; and (4) his conviction was the result of a miscarriage of justice. On April 7, 2009, Defendant moved to amend and expand the fourth ground. On June 3, 2009, Defendant filed a Motion for Production of Certified Transcript (Doc. No. 253), which the Court denied under 28 U.S.C. § 753(f) (Doc. No. 254). Defendant then filed a Motion to Recuse this Court (specifically, Judge Jack Zouhary) from ruling on any of the pending motions in this case.

## MOTION TO RECUSE

In his Motion to Recuse, Defendant appears to argue this Court must recuse itself from ruling on Defendant's pending Section 2255 motion because it has a personal bias or prejudice as a result of the Court's involvement in the underlying trial and rulings on prior motions. Specifically, Defendant finds prejudice in the fact this Court: previously denied Defendant's Motion for New Trial; denied Defendant's Motion for Production of Transcript; "misconstrued" Defendant's request for a certified copy of the transcript; and because Defendant argues this Court abused its discretion

in issuing some of its prior Orders, the Court will be prejudiced when deciding the pending Section 2255 motion.[1]

In his Motion to Recuse, Defendant further protests the Court's decision to deny his prior motion for certified transcripts, alleging that "the court's decision shocks the conscious while presenting a picture of a [indecipherable] peal horror" (Doc. No. 250, p. 4).

Under 28 U.S.C. § 455(a), a judge has an obligation to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute goes on to delineate circumstances in which a judge must disqualify himself, and in relevant part includes:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> \* \* \*
>
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]

---

[1] This summation is gleaned from a liberal construction of the motion. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). The thrust of Defendant's argument reads as follows:

> 4) That had appellate counsel raised said issues, they would have had to have been presented as the "abuse of trial court's discretion to have entertained them," citation omitted;
>
> 5) That the possibility of raising an abuse of discretion claim against a reviewing court unequivocally affects judgment one way or the other, i.e. negatively or positively;
>
> 6) That at Page 2 3rd. Paragraph of ORDER filed 06/15/2009, the trial court has lain foundation to again abuse its discretion;
>
> 7) That the reviewing court has clearly misconstrued Petitioner's intent requesting copy (certified) of transcript as the motion for 2255 was filed and stamped March 9, 2009 and amend shortly thereafter;

(Doc. No. 250, pp. 2-3).

28 U.S.C. § 455(b). The Court found it had no obligation to recuse itself because it has no "stake" in Defendant's case, nor any prejudice or bias against Defendant. The only knowledge the Court has of facts in this case were obtained through proper court proceedings.

The Government correctly points out that 28 U.S.C. § 144 describes the proper procedure by which a party must adhere in order to disqualify a judge for reasons of bias or prejudice. That statute reads:

> Whenever a party to any proceeding in a district court makes and files a timely and *sufficient* affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144 (emphasis added). Defendant has failed to file an affidavit in conjunction with his motion. However, even construing Defendant's motion as an affidavit, the motion nonetheless fails because it is not "sufficient" as Defendant has failed to set forth facts demonstrating a bias or prejudice as described in 28 U.S.C. § 455(b). To warrant recusal under 28 U.S.C. § 144, "an affidavit must allege facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party." *Ullmo ex. rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 681 (6th Cir. 2001) (internal citations omitted). Furthermore, the alleged facts "must relate to extrajudicial conduct rather than judicial conduct. In other words, the affidavit must allege facts showing a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Id.* (internal citations omitted).

Here, the allegations of bias or prejudice do not stem from any extra-judicial circumstance. Rather, it is precisely this Court's *judicial* conduct, namely adverse rulings on various post-trial motions, which Defendant cites as the basis of his allegation of bias. Defendant's unhappiness with this Court's ruling cannot form the basis for a recusal. Furthermore, the established procedure for Section 2255 motions is that the same District Court presiding at trial and sentencing preside over the Section 2255 motion. *See* Rule 4(a) of the Section 2255 Rules, *available at* http://www.uscourts.gov/rules/2254_2255_Rules.pdf (last accessed July 28, 2009).

Because Defendant failed to file a "sufficient" affidavit as required by 28 U.S.C. § 144, his Motion for Recusal is denied. The Court finds recusal is neither necessary nor appropriate, and believes it can fairly address Defendant's new motions.

### SECTION 2255 MOTION AND MOTION TO AMEND

Defendant's Motion to Amend is granted, and this Court will consider the additional allegations in that motion as part of its analysis of Defendant's Section 2255 motion. Defendant's Section 2255 motion raises four grounds for relief: (1) ineffective assistance of trial counsel; (2) conviction obtained by prosecutorial misconduct; (3) ineffective assistance of appellate counsel; and (4) conviction resulting from a miscarriage of justice. Each is addressed below.

**Section 2255 Standard of Review**

To prevail on a Section 2255 motion alleging non-constitutional error, defendant must establish the error "qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed v. Farley*, 512 U.S. 339, 348 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). This stringent standard recognizes that habeas petitions are not meant to take the place of direct appeals.

*See Sunal v. Large*, 332 U.S. 174, 178 (1947). Thus, non-constitutional claims not raised at trial or on direct appeal are waived for collateral review, except where the errors result in something akin to a denial of due process. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

To prevail on a Section 2255 motion alleging constitutional error, defendant must establish an error which had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). However, in the case where defendant has failed to assert his claims on direct appeal, and thus has procedurally defaulted on these claims, to raise them in a Section 2255 motion he also must show "either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). This is so because "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Id.* (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).

Furthermore, "[i]t is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998) (quoting *Frady*, 456 U.S. at 166). "A petitioner seeking to vacate a sentence pursuant to § 2255 has the burden of sustaining his contentions by a preponderance of the evidence." *McNeil v. United States*, 72 F. Supp. 2d 801, 804 (N.D. Ohio 2004).

### 1. Ineffective Assistance of Trial Counsel

Defendant argues trial counsel was ineffective for failing to challenge this Court's jurisdiction; failing to conduct a background check on CI Estelle; not subpoenaing Lisa Noel; failing to conduct a meaningful adversarial defense; altering trial strategy during the "eleventh hour"; not moving for

8

acquittal following the verdict; failing to challenge jurors' "fulfilling criterias for guilty verdict in Counts 1 and 12"; and failing to challenge the amount of drugs attributed to Defendant. (Doc. No. 241, pp. 5 & 8).

For a claim of ineffective assistance of counsel, a defendant must ordinarily prove two components: (1) counsel's performance was deficient; and (2) resulting prejudice, such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000).

To satisfy the first prong, a defendant must point to specific errors, and the reviewing court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. "[J]udicial scrutiny of a counsel's performance must be highly deferential and [] every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (internal citations omitted).

To satisfy the second prong, a defendant must demonstrate prejudice, establishing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

First, Defendant's claim that trial counsel committed constitutional error by not challenging this Court's jurisdiction is baseless. Defendant was charged under the federal drug trafficking statute,

9

21 U.S.C. § 841. District courts have original jurisdiction over all federal offenses. *See* 18 U.S.C. § 3231.

Second, this Court agrees with the Government's characterization that the remainder of Defendant's complaints with respect to trial counsel are effectively a difference of opinion as to how the case should have been managed, and Defendant has failed to establish either error or resulting prejudice.

With respect to conducting a background check on CI Estelle, the Court fails to see what benefit would have been gained. Estelle admitted to fabricating events on the witness stand, clearly putting his credibility into question. It was well within the jury's province to evaluate Estelle's credibility and determine which portions of his testimony, if any, were credible. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Defendant has not established any resulting prejudice.

With respect to trial counsel's failure to move for acquittal following the verdict or challenge the sufficiency of the jurors' findings of guilt, the Sixth Circuit already addressed Defendant's sufficiency of the evidence argument on direct appeal. The appellate court held the evidence was "more than sufficient to establish that Poole knew about the drug-trafficking conspiracy and participated in it, and that he knowingly possessed cocaine base with intent to distribute it." *Poole*, 538 F.3d at 647 (internal citations omitted). In light of this, Defendant cannot demonstrate any prejudice under the *Strickland* prong as to these complaints.

Defendant's remaining complaints about his trial counsel easily fall into the category of tactical decisions to which great deference is afforded. *See Swatzell v. Lewis*, 79 F. App'x 165, 167 (6th Cir. 2003) (noting that "trial counsel's tactical decisions are particularly difficult to attack"). Furthermore, Defendant has failed to articulate any resulting prejudice to his case.

### 2. Prosecutorial Misconduct

Defendant also claims he is entitled to relief under Section 2255 by alleging the prosecutor "deliberately deceived jurors" by "ad libbing" portions of a taped conversation which were inaudible.

During a controlled drug purchase in a car with Defendant and Thornton, Estelle wore a body wire. The audiotape was played for the jury, even though part of the audiotape was inaudible. At trial, Estelle was questioned about a reference by Thornton to "Rob"; Estelle testified that he believed Thornton was referring to Defendant -- "Robert." Estelle further testified that he understood Thornton to mean that "he thought he was going to bring it in crack form, but he brought it in powder form" (Trial Tr., Estelle, p. 535).

Defendant did not raise this claim on direct appeal and fails to show he has good cause for failing to do so. Therefore, this claim is barred from collateral review. *Frady*, 456 U.S. at 159. In any event, when reviewing claims of prosecutorial misconduct, the Court must first determine whether the statements were improper, and if so, whether they were flagrant and warrant reversal. *United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000). Defendant has not provided the Court with any evidence of improper statements. It was not improper for Estelle to testify about his understanding of the conversation and what may have been said during inaudible portions of the audiotape.

### 3. Ineffective Assistance of Appellate Counsel

Defendant alleges his appellate counsel was ineffective for not raising an ineffective assistance of trial counsel argument on direct appeal, for failing to preserve his sufficiency of the evidence claim, and for "prematurely quit[ting]" (Doc. No. 241, pp. 5-6).

Appellate counsel's performance is also evaluated in accordance with the two-prong *Strickland* standard. *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004). Appellate counsel has no

11

constitutional duty to raise every non-frivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To demonstrate that an appellate attorney has rendered deficient performance under *Strickland*, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2002)).

Defendant's argument that appellate counsel failed to preserve his sufficiency of the evidence claim has been decided against him by the Sixth Circuit. *See Poole*, 538 F.3d at 646 ("Poole challenges the sufficiency of the evidence to support his convictions.").

Defendant's allegation that appellate counsel "prematurely quit" is likewise without merit. Appellate counsel fully briefed the argument to the Sixth Circuit. Determining which colorable arguments to raise on appeal is left to the sound professional judgment of appellate counsel. *Jones*, 463 U.S. at 751. Defendant's appellate counsel was not deficient for not raising every conceivable argument on appeal. Indeed, appellate counsel may not raise frivolous arguments.

After the Sixth Circuit issued its opinion affirming Defendant's conviction in August 2008, Defendant filed a *pro se* motion with the Sixth Circuit, effectively asking for reconsideration and for a rehearing en banc. The Circuit denied his motion for reconsideration. To the extent Defendant is arguing his counsel prematurely quit because Defendant responded *pro se* to the Circuit's opinion, this argument is also not well taken. Appellate counsel had no constitutional obligation to fight on with frivolous requests.

Finally, this Court finds Defendant's appellate counsel was not constitutionally defective for failing to raise an ineffective assistance of trial counsel claim. As a general rule, the Circuit "will not review claims of ineffective assistance of counsel for the first time on direct appeal [unless] the record

12

is adequately developed." *United States v. Stewart*, 507 F.3d 391, 394 (6th Cir. 2007) (alteration in original) (internal citation omitted). "Where the record is not adequately developed, the usual course is to defer consideration of the claim to postconviction proceedings under 28 U.S.C. § 2255." *United States v. Watkins*, 509 F.3d 277, 283 (6th Cir. 2007). Thus, Defendant cannot show appellate counsel erred; rather, appellate counsel followed established practice.

### 4. Miscarriage of Justice

In his final claim for relief, Defendant alleges his conviction was the result of a number of miscarriages of justice, including:

- trial counsel unduly influenced Defendant not to testify at the "eleventh hour";

- the Court knew Defendant's trial counsel had a medical appointment the afternoon of January 31, 2007, and therefore his conviction was the result of this Court stating "it had a plan" and "we had a plan," rather than the jury's independent assessment of the evidence;

- trial counsel's failure to subpoena certain witnesses and conduct certain background checks;

- the Government misled the jury and unduly influenced the verdict;

- his appeal was not handled appropriately;

- Defendant was denied consideration of an en banc rehearing by a Sixth Circuit clerk, not an Article III judge; and

- there are discrepancies as between at least two copies of the transcript from this case.

(Doc. No. 241, pp. 6 & 8; Doc. No. 243, pp. 1-3).

This Court is unsure under what legal theory Defendant is raising these issues, but regardless, the claims are meritless. Defendant's arguments of prosecutorial misconduct and ineffective assistance of counsel have already been addressed earlier in this Opinion.

13

Courts have the authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Comments by this Court's about expectations when certain witnesses would testify or how long it would take to complete the trial did not pressure the jury to reach a particular result.

It was sound trial strategy for Defendant's counsel to advise him not to testify, and Defendant has presented no evidence that he was unduly influenced. In *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000), the Sixth Circuit held:

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington,* 466 U.S. 668, 688-90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record . . . .
>
> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer*, 1997 WL 12125 at *2. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

Defendant was not coerced to waive his right to testify. To the contrary, the record shows Defendant agreed with his counsel's advice not to testify.

Similarly, Defendant's claim that discrepancies exist as between two transcripts is not well taken. This claim is without any specifics, nor what the relevance of any discrepancy may be to his

14

ultimate conviction. There may be a discrepancy between the unofficial transcript and the certificated record, but Defendant fails to identify the discrepancy or explain how it relates to any violated right. Moreover, trial transcripts were not evidence before the jury and could not have formed the basis of the jury's findings of guilt.

Finally, Defendant's argument that he was denied adjudication of his case before an Article III judge is without merit. After the Sixth Circuit affirmed Defendant's conviction in August 2008, Defendant filed a *pro se* motion for reconsideration, which was ultimately denied by the Circuit in February 6, 2009. When Defendant then tried to file another petition for reconsideration, this time in the form of a request for a rehearing en banc, the Sixth Circuit staff returned Defendant's documents to him without filing them. The cover letter, dated February 24, 2009 and signed by the Circuit's transcript/en banc coordinator, stated that the law does not provide for filing successive petitions for rehearing.

Defendant's rehearing en banc petition was not reviewed by the Sixth Circuit because there is no procedure for his petition to be properly submitted for their review. The Circuit considered Defendant's arguments on direct appeal and upon reconsideration. Defendant has no right to perpetually litigate his case.

## CONCLUSION

Defendant's Motion to Recuse (Doc. No. 250) is denied, this Court having no extra-judicial interest in this case. Defendant's Motion to Amend (Doc. No. 243) is granted, and his Section 2255 Motion to Vacate (Doc. No. 241) is denied because Defendant has failed to raise an error warranting habeas relief.

Furthermore, pursuant to 28 U.S.C. §§ 1915(a) and 2253(c), this Court certifies that an appeal of this action could not be taken in good faith and that Defendant has failed to make a substantial showing of the denial of a constitutional right.  Therefore, this Court declines to issue a certificate of appealability.  This refusal also applies to Defendant's previous Motion for Production of Certified Transcript (Doc. No. 253).

IT IS SO ORDERED.

                                                      s/ *Jack Zouhary*
                                                      JACK ZOUHARY
                                                      U. S. DISTRICT JUDGE

July 31, 2009